TORRES ET AL., PLAINTIFFS AND APPELLANTS; *v.* PLAZUELA SUGAR CO., DEFENDANT AND APPELLEE.

APPEAL `from the District Court of Arecibo in an Action of Denial of Servitude.

No. 1347.—Decided July 28, 1916.

SERVITUDE—RIGHT OF WAY—WRITTEN TITLE.—Pursuant to sections 546 and 547 of the Civil Code, a non-apparent and discontinuous servitude of right of way can only be acquired by a written title; but if by laying railroad tracks on the land the servitude is converted into an apparent one, it is doubtful whether a written title would be necessary. In both cases a title of some sort must always be shown.

ID.—CONSIDERATION—CONSENT—OWNERSHIP.—When there is no lawful consideration for a servitude of right of way and the owner of the servient tenement has received no benefit therefrom, the fact that he has consented thereto does not imply that he has forever renounced his absolute ownership.

ID.—DENIAL OF SERVITUDE—CONSENT.—When in an action of denial of a servitude of right of way praying that the defendant, a private corporation, be enjoined from running its trains and ordered to remove the tracks laid on the property, it appears that the plaintiff only gave his consent, the case should be governed, perhaps, by section 446 of the Civil Code.

ID.—ID.—PUBLIC SERVICE CORPORATION—PRIVATE CORPORATION—EQUITABLE ESTOPPEL.—In this case the defendant is not a public service but a private corporation engaged in the manufacture of cane sugar and for some years has been using some land belonging to the plaintiff, constructing thereon a private railroad track for the transportation of cane to and from the said factory; and the theory of equitable estoppel having been invoked to prove the existence of a contract, completed or inchoate, or the beginning of negotiations similar to the right of eminent domain, it was held that as the defendant corporation was not a public service corporation and as there was no compensation, the provisions of the Civil Code in force are applicable and not the rule of equitable estoppel.

The facts are stated in the opinion.

*Mr. R. Agrait Aldea* for the appellants.

*Messrs. Cayetano Coll y Cuchí* and *Robert H. Todd, Jr.*, for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The complainants are the owners of three rural lots within the judicial district of Arecibo. They filed the suit against the Plazuela Sugar Company on January 27, 1915, a suit somewhat in the nature of the remedy of injunction,

to obtain a declaration against the existence of a servitude (*negatoria de servidumbre*), and requiring the defendant to stop running its trains and to remove certain railroad tracks which the defendant had placed on the lands of the said complainants.

The defendant is a private corporation which runs a sugar mill, and it is not alleged or shown that it owns or controls a public railroad or that the railroad it has placed on the lands of the complainants is a public service railroad. The said railroad, however, does act as a feeder for the sugar mill and brings cane from the various farms to the central's mill. The rails were placed on the land in 1907 or 1908.

The complainants at the trial proved their titles and rested. The defendant presented several defenses and the court rendered judgment in its favor.

The court in its opinion found that the complainants in 1907 or 1908 had authorized and empowered the defendant to place its rails on the land in question and that they themselves indicated the course the road should take; that after the first plans were drawn they were varied at the instance of the complainants, who watched the process of construction, and never at any time protested or objected; and that in all the time the road had been there the complainants had never asked that the trains should stop running, or that the rails should be removed or yet presented any claim of money for damages, or asked for any agreement.

There is some question as to the nature of the servitude in this case. Generally, a right of way is a non-apparent, discontinuous servitude. If this is so, the appellants are right in maintaining that under sections 546 and 547 of the Civil Code such a right can only be acquired by a written title. On the other hand, if by reason of the placing of the rails on the land the servitude becomes apparent, then there may be serious doubt if a written document is needed. Scae-

vola, Vol. X, p. 238. In any event, it was necessary for the appellee to prove a title of some sort. We shall briefly discuss whether the appellee, irrespective of any principle of estoppel, acquired a title in this case.

We agree with the appellants that no consideration or *"causa"* was shown in this case. The appellants obtained no benefit of any kind that could be considered a legal cause or consideration. In point of fact, the proof showed, and the tendency of a servitude always is, to prejudice the servient tenement. The appellee, however, maintains that it has suffered prejudice and has been put to expense by reason of the acts of the complainants, and offered proof tending to show that if complainants had refused permission to enter the land the defendant would not have sent its road over the land; but the proof presented by the appellee in itself shows that the defendant sought the complainants and asked permission to place the rails on the land. The court found that the complainants consented and although we think that the proof, with respect to the consent of the principal complainant, the husband, is rather meagre and unsatisfactory on which to found a title, yet we shall assume with the court that such consent was given. Would such consent mean that the complainants had forever parted with their full dominion of the land over which the railroad crosses? The answer seems to be given by section 446 of the Civil Code:

"Acts merely tolerated and those clandestinely executed, without the knowledge of the possessor of a thing, or with violence, do not affect possession."

But aside from this section, we cannot see that the damage or injury arose from anything but the defendant's own act and seeking, and that the prejudice which it has suffered was induced by its own act and was not the kind of an act wherein a party suffers prejudice by reason of an inducement proceeding from another.

The defendant has cited an elaborate amount of jurisprudence to show an equitable estoppel against the complainants, which we shall presently discuss. The necessity that the courts have found of invoking the principle of an equitable estoppel, as against the owners of land, to aid public service corporations which have laid their rails on lands without a clear contract or understanding with the owner, shows that no right or title otherwise arose. Estoppel is a last resort. It is the exception to prove the rule of a right or title found in the meeting of the minds of the particular individuals concerned. No such title arose in this case and the court could not declare one.

The defendant also maintained an equitable estoppel and cited a number of cases to that effect. We have not been able to find several of the cases cited, but by reason of the citations in the brief we do not have any difficulty in following the trend of all of them. In the great majority of these cases of estoppel the complainant had either entered into negotiations with the defendant or had received part of an agreed compensation, or some other similar thing, from which the court could either see the elements of a contract, completed or inchoate, or else the beginning of negotiations similar to the right of eminent domain. *Mitchell* v. *New Orleans, etc., R. R. Co.,* 41 La. Ann. 363; *Scarrit* v. *Kansas City Ry. Co.,* 127 Mo. 298; *Evansville, etc., R. R. Co.* v. *Nye,* 123 Ind. 223; *Pryzbylowicz* v. *Missouri River R. Co.,* 17 Fed. Rep. 492; *Goodin* v. *Cincinnati, etc., Canal Co. et al.,* 18 Ohio St. Rep. 169; *Paterson N. & Y. R. R. Co.* v. *Kamlah,* 42 N. J. Eq. 49. In all these cases the defendant was a public railroad corporation and the general public may be supposed to have acquired some rights. The strongest case of the defendant is *Mitchell* v. *New Orleans R. R. Co., supra,* but there again the defendant was a public service corporation and the court considered that the public had acquired some rights, and the complainant in the same suit was awarded

compensation. The idea of compensation and the rights of the public run through all these cases and others. *Hendrix* v. *Southern Ry. Co.,* 130 Ala. 205, 89 Am. St. Rep. 27. See notes to *Goodin* v. *Cincinnati, etc., Canal Co.,* 98 Am. Dec. 102; *Davis* v. *Davis,* 26 Cal. 23, 85 Am. Dec. 157, and notes thereon; 10 R. C. L. 784. The defendant here is a private corporation and there is no proof that it ever entered into negotiations for the acquisition of the land or a servitude thereunder. The doctrine of equitable estoppel is a very salutary one in a proper case, but it is not to be lightly extended in the face of the clear provision of the Civil Code. We are aware of the cases in which it would seem that the courts have permitted a defendant to make compensation at the time a suit is brought and thus acquire a title, but the defendant in these cases has always been a public service corporation. It is also a fact that the defendant has had the use of the occupied lands for seven or eight years without paying compensation, and in no part of its pleading did it offer such compensation. The courts have always reserved compensation or else awarded it, even when the rights of the public have intervened. The state of the law ought to have been known to the defendant and it ought to have made some valid arrangement with the complainant, Torres, or with some person duly authorized by him. Otherwise the nature of its possession was precarious.

The judgment must be reversed, the defendant must be ordered to stop running its trains over the lands of the complainants and remove its tracks.

*Reversed.*

Chief Justice Hernández and Justice Aldrey concurred.

Mr. Justice Hutchison concurred in the judgment.

Mr. Justice dél Toro took no part in the decision of this case.